# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON CONYER, | ) CIVIL ACTION NO. |
| Plaintiff, | ) |
| v. | ) |
| PHANTOM FIREWORKS SHOWROOMS, LLC, | ) |
| Defendants. | ) JURY TRIAL DEMANDED |

## COMPLAINT

### I. PRELIMINARY STATEMENT

By this action, Plaintiff, Aaron Conyer, seeks wage loss, compensatory and punitive damages, costs, attorneys' fees, pre and post-judgment interest because Phantom Fireworks Showrooms, LLC discriminated against him due to his race, a violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. §2000 ("Title VII") and 42 U.S.C. §1981 ("Section 1981"). Plaintiff also seeks the same remedies as a result of Defendant's termination of his employment in retaliation for his complaints of discrimination that is in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. §2000. And finally, Plaintiff seeks wages, liquidated damages, pre- and post-judgment interest and attorney's fees and cost as a result of Defendant's failure to pay his wages under the Wage Payment and Collection Law 43 P.S. § 260.1, et seq.

### II. JURISDICTION

1. This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

3. On June 7, 2021, Plaintiff timely dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") against the Defendant, alleging race discrimination and retaliation. Plaintiff's Charge was dual-filed with the Pennsylvania Human Rights Commission (hereinafter "PHRC").[1]

4. The EEOC issued a Notice of Right to Sue Letter to Plaintiff on October 15, 2021. This Complaint has been filed within ninety (90) days of the Plaintiff's receipt of the letter, thus making this action timely.

### III. PARTIES

5. Plaintiff is Aaron Conyer (hereinafter "Mr. Conyer"), an adult individual who resides at 7739 Saltsburg Rd, Pittsburgh, PA 15239.

6. Defendant Phantom Fireworks Showrooms, LLC (hereinafter "Phantom") is a Foreign limited liability company with an address of 12266 E. Main Street PO Box 187 North East, PA 16428.

7. At all relevant times, Phantom is an employer within the definition of Title VII.

8. At all relevant times, Ms. Mr. Conyer was an employee of Phantom within the definition of Title VII.

---

[1] Once the administrative requirements have been exhausted, Plaintiff intends to amend this Complaint to include two additional counts under the PHRA.

## VI. STATEMENT OF CLAIM

9. Mr. Conyer identifies as a Black Male.

10. In or around May 2017, Mr. Conyer began working at Phantom as a sales associate at their Monroeville, PA store location.

11. At all times relevant to this Complaint, Mr. Conyer lived approximately five minutes from the Monroeville, PA store location.

12. In or around May 2017, Mr. Conyer was hired by general manager Jeff Graham.

13. In or around August 2018, Mr. Conyer was promoted to shift lead at the Monroeville, PA store.

14. On or about October 21, 2018, while working for Mr. Graham, Mr. Conyer was promoted to Assistant Store Manager.

15. In or around May 2020, Jeff Graham left Phantom's employment, and two white managers, Brittany Coleman and Mike Marcis, were promoted above Mr. Conyer to replace Jeff Graham.

16. Mr. Conyer was the only Black manager or assistant manager at the Monroeville, PA location the entire time he worked there.

17. To his knowledge, Mr. Conyer was the only Black manager or assistant manager for Defendant in Western Pennsylvania.

18. Mr. Conyer was an excellent employee who received praise for his performance while working at Phantom.

19. Phantom encourages employees to ask friends and family members to work during the busy summer season.

20. In or around July 2020, Mr. Conyer's nephew Tyrone Stewart, who also identifies as Black, began working at the store.

21. On or about July 3, 2020, Mr. Stewart and a white cashier experienced a miscommunication.

22. On or about July 3, 2020, Ms. Coleman was summoned to resolve the miscommunication. She sided with the white cashier.

23. On or about July 3, 2020, Mr. Conyer and Mr. Stewart took their lunch after the incident to let things cool down and then returned to work.

24. On or about July 3, 2020, after Mr. Conyer and Mr. Stewart returned from their lunch. The white cashier apologized to Mr. Stewart and Mr. Stewart apologized as well.

25. On or about July 3, 2020, Ms. Coleman escalated the incident to Jeff Bell, a phantom Regional Manager from Ohio who was helping the store. Mr. Bell called a meeting with Mr. Conyer, Mr. Marcis, and Ms. Colman. Ms. Colman became very upset during the meeting and said "let me walk away before something bad happens." After Ms. Coleman's outburst, Mr. Conyer asked Mr. Bell if he and his nephew could leave early as they only had 15 minutes left on their shift. Mr. Bell allowed Mr. Conyer and his nephew to leave.

26. On or about July 3, 2020, after Mr. Conyer left another employee overheard Ms. Coleman making racially disparaging remarks to Mr. Marcis, including: "Because they are Black, they can do whatever they want?"

27. On or about July 3, 2020, the employee informed Mr. Conyer of Ms. Coleman's remarks about his race.

28. On or about July 3, 2020, both the employee and Mr. Conyer reported Ms. Coleman's remark to Defendant's Human Resources Department.

29. On or about July 3, 2020, Defendant's Human Resources Department contacted Mr. Conyer about Ms. Coleman's racial remark. Mr. Conyer asked that he no longer be scheduled shifts with Ms. Coleman because of her racist views regarding Black people. America has a long history of dismissing Black people as a group even though they are merely asserting the same rights as other races.

30. On or about July 4, 2020, the following day, Mr. Conyer was scheduled to work with Ms. Coleman.

31. On July 8, 2020, Defendant held a meeting with Mr. Conyer, a representative from Human Resources and their legal department about Mr. Conyer's report of race discrimination. During the meeting, Mr. Conyer was asked to take "race off the table" and continue to work with Ms. Coleman. Unbeknownst to Mr. Conyer, both Ms. Coleman and Mr. Marcis lied about making the comment.

32. On or about July 9, 2020, after Mr. Conyer reported Ms. Coleman's racist remark and met with Defendant, Mr. Marcis told Mr. Conyer "Have fun working with Brit tomorrow." Mr. Marcis' comment implied that Mr. Conyer would be singled out for reporting Ms. Coleman's racism.

33. Mr. Conyer reported Mr. Marcis' comment to Defendant.

34. During the Human Resources Department investigation into Mr. Conyer's complaints of race discrimination, Mr. Marcis lied and told Human Resources that Ms. Coleman did not make the comment. Later when Ms. Coleman admitted to making the comment, Mr. Marcis admitted that he lied to cover up her behavior. Defendant did not fire Mr. Marcis nor Ms. Coleman's for lying in the investigation.

35. Defendant ordered Mr. Marcis, Ms. Coleman, and Mr. Conyer to undergo diversity training. Defendant told Mr. Conyer that he would be in a different diversity class, as the class asks participants to share information. Instead, Mr. Conyer was forced to attend diversity training with Ms. Coleman.

36. On or about September 14, 2021, Defendant told Mr. Conyer that they were transferring him to another store in Greensburg, PA, nearly an hour from his house.

37. Defendant also stated that Mr. Marcis and Ms. Coleman would be transferred from the Monroeville, PA store.

38. Mr. Marcis and Ms. Coleman were not transferred from the Monroeville, PA store and continued to work there up until Defendant fired Mr. Conyer.

39. Mr. Conyer became the only Black store employee at Defendant's Greensburg, PA location.

40. When Mr. Conyer transferred to the Greensburg, PA store, Jeff Rule, who is white, became his new manager.

41. Mr. Rule made continuous and nearly daily racially motivated comments while Mr. Conyer worked at the Greensburg, PA store. For example:

a. Mr. Rule made comments calling the largely peaceful Black Lives Matter protestors "terrorists."

b. Mr. Rule vocally criticized and boycotted the National Football League for pledging to combat and end systemic racism.

42. Mr. Rule treated Mr. Conyer differently than the other white employees.

43. Mr. Rule attempted to issue discipline and performance warnings to Mr. Conyer that he would not discipline a white employee for making.

44. Mr. Rule attempted to blame and discipline Mr. Conyer allegedly scratching a cash register Mr. Conyer did not use. Mr. Rule did this because of Mr. Conyer's race.

45. Under Defendant's policies and procedures, managers are required to have two people present whenever an employee was issued any discipline.

46. On or about December 22, 2020, Mr. Rule sent the other store assistant manager Robert Doperak home for the evening at the end of his shift. At that point, Mr. Conyer and Mr. Rule in the store were the only employees in the store.

47. On or about December 22, 2020, Mr. Rule, after sending Mr. Doperak home, asked Mr. Conyer to go into his office and sign two discriminatory write ups.

48. Defendant violated its own policies when Mr. Rule presented Mr. Conyer with disciplinary measures without another person present.

49. On or about December 22, 2020, Mr. Conyer stated that could not sign the write ups because he did not engage in the conduct. Upon information and belief, Mr. Conyer was allowed under Defendant's policies and procedures to not sign the write ups if he did not agree with them.

50. On or about December 22, 2020, after Mr. Conyer stated that he would not sign the write-ups Mr. Rule became irate.

   a. He started yelling at Mr. Conyer and telling him to "SHUT UP" without a mask on.

   b. Mr. Conyer left the situation to prevent further escalation.

   c. As Mr. Conyer was leaving he overheard Mr. Rule calling Debra Vogelberger, Defendant's Regional Manager of the Monroeville and Greensburg stores and describing Mr. Conyer as "acting crazy." Mr. Rule's comments made Mr. Conyer sound like a stereotypical "angry Black man."

51. On December 22, 2020, Mr. Conyer contacted a different manager, Randy Block, at the same time as Mr. Rule contacted Ms. Vogelberger due to Mr. Rule's aggressive and threatening behavior.

52. On or about December 22, 2020, after leaving the store to allow Mr. Rule to calm down, Mr. Conyer was contacted by Ms. Vogelberger. Ms. Vogelberger did not allow Mr. Conyer to explain what happened. She accused Mr. Conyer of having a pattern in which "legal" and "everyone else" became involved due to Mr. Conyer's engagement in protected activity. She then suspended Mr. Conyer's employment.

53. On January 4, 2021, Defendant terminated Mr. Conyer for racially motivated reasons and for retaliation for reporting race discrimination.

54. In or around September 2020, Defendant informed Mr. Conyer that he would receive a five thousand dollar compensation bonus ($5,000) to be paid in two installments, the first on September 25, 2020 and the second on in or around February 2021. The bonus is based on the

success of the retail location, the performance of the management team, and the performance of the individual. The bonus is calculated after the busy summer season.

55. Mr. Conyer's 2020 bonus was vested and earned on September 25, 2020.

56. On January 4, 2021, during his termination meeting with Ms. Vogelberger, Mr. Conyer asked when he would receive the second half of his 2020 bonus. Ms. Vogelberger informed him that he would receive it at the same time as everyone else.

57. On February 3, 2020, Defendant informed Mr. Conyer that they would not pay the second half of his bonus.

58. Defendant has not paid Mr. Conyer the second half of his 2020 bonus.

59. The race discrimination and retaliation Mr. Conyer suffered while working for Defendant affected his self-esteem and caused him severe emotional distress.

60. The Defendant's extreme and outrageous conduct warrants the imposition of substantial compensatory damages and punitive damages.

**CLAIMS FOR RELIEF**

**COUNT I – VIOLATION OF Title VII - RACE DISCRIMINATION**

61. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

62. Defendant's conduct described above and herein constitutes race discrimination and is a violation of Title VII.

63. Defendant's discriminatory conduct was used as a basis for employment decisions affecting Plaintiff.

64. The conduct described above and herein was unlawful race discrimination committed by Defendant's employees, servants and/or agents who had the effective ability to influence employment actions that could affect Plaintiff, including but not limited to demotion, reduction in wages and firing.

65. As a direct and proximate result of Defendant's unlawful, willful, deliberate discrimination against Plaintiff, Plaintiff incurred substantial losses, continuing in their nature, including but not limited to loss wages and loss of benefits, harm to his reputation, adverse effects on his career and diminished earning capacity.

66. As a direct and proximate result of Defendant's unlawful, willful and deliberate discrimination against Plaintiff, Plaintiff suffered from physical problems that included but are not limited to emotional distress and anxiety.

67. By reason of Defendant's unlawful, willful, outrageous and deliberate misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

68. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## **COUNT II – VIOLATION OF TITLE VII - RETALIATION**

69. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

70. Defendant has intentionally and willfully engaged in a series of unlawful acts in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges

of employment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

71. Defendant intentionally retaliated against Plaintiff for opposing Defendant's race discrimination as evidenced by, among other things, Defendant's actions and comments and the temporal proximity of the actions and comments to Plaintiff's termination of employment.

72. By reason of Defendant's unlawful, willful, outrageous and deliberate misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

73. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT III – VIOLATION OF SECTION 1981

74. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

75. Defendant has intentionally and willfully engaged in a series of unlawful acts in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Section 1981.

76. Defendant's discriminatory conduct was used as a basis for employment decisions affecting Plaintiff.

77. The conduct described above and herein was unlawful race discrimination committed by Defendant's employees, servants and/or agents who had the effective ability to influence employment actions that could affect Plaintiff, including but not limited to demotion, reduction in wages and firing.

78. As a direct and proximate result of Defendant's unlawful, willful, deliberate discrimination against Plaintiff, Plaintiff incurred substantial losses, continuing in their nature, including but not limited to loss wages and loss of benefits, harm to his reputation, adverse effects on his career and diminished earning capacity.

79. As a direct and proximate result of Defendant's unlawful, willful and deliberate discrimination against Plaintiff, Plaintiff suffered from physical problems that included but are not limited to emotional distress and anxiety.

80. By reason of Defendant's unlawful, willful, outrageous and deliberate misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

81. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT III – VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW -43 P.S. § 260.1, et seq.

82. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

83. Defendant is Plaintiff's employer and as such is required to pay Plaintiff wages as agreed to upon the start of employment including all fringe benefits.

84. In September 2020, Defendant agreed to pay Plaintiff a vested and earned bonus in the amount of five thousand dollars ("Bonus") for work already performed. The Bonus was to be paid in two installments, the first one due on September 25, 2020 and the second one due in or around February 2021.

85. Defendant paid the September 25, 2020 installment.

86. On January 4, 2021, Plaintiff requested that Defendant pay the second half of the Bonus.

87. Defendant stated that Plaintiff would be paid the Bonus with everyone else.

88. On February 3, 2021, Defendant refused to pay Plaintiff the Bonus.

89. Defendant refused to pay Plaintiff all agreed upon wages.

90. This complaint was filed more than sixty (60) days after Plaintiff requested wages under the compensation agreement.

91. Defendant's violation was not in good faith.

92. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c) Award Plaintiff wage loss damages, including back pay and front pay, damages associated with the increased tax burden of any award, and lost fringe and other benefits of employment;

(d) Award Plaintiff compensatory damages under Title VII;

(e) Award Plaintiff punitive damages under Title VII;

(f) Award Plaintiff unpaid wages, liquidated damages, and attorney's fees;

(g) Award Plaintiff pre and post-judgment interest;

(h) Award Plaintiff costs and attorneys' fees;

(i) Award Plaintiff damages under Section 1981; and

(j) Grant such other relief as the Court deems just and appropriate.

                                                  Respectfully Submitted,

                                                  /s/ Rachel L. McElroy
                                                  Rachel L. McElroy, Esq.
                                                  PA ID No. 321624

                                                  McElroy Law Firm, LLC
                                                  461 Cochran Rd. #107
                                                  Pittsburgh, PA 15228
                                                  Phone: 412-620-8735
                                                  rachel@mcelroylawfirm.com

                                                  Attorney for Plaintiff