**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DALIA NASKOVIC, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v . | ) | |
| | ) | |
| UPMC BENEFIT MANAGEMENT | ) | |
| SERVICES, INC., a/k/a UPMC | ) | |
| WORKPARTNERS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | Filed Electronically |

## COMPLAINT IN CIVIL ACTION

Plaintiff Dalia Naskovic, by and through undersigned counsel, files the following

Complaint in Civil Action.

## I.  PARTIES

1.      Plaintiff Dalia Naskovic is a resident of Allegheny County, PA.

2.      Defendant UPMC Benefit Management Services, Inc. a/k/a UPMC WorkPartners

("UPMC WorkPartners") is a PA business corporation with an address of 600 Grant Street, 55th

Floor, Pittsburgh, PA 15219.

## II.  JURISDICTION

3.      The jurisdiction of this Court over the matters in this Complaint is founded upon 28

U.S.C. § 1331 and 28 U.S.C. § 1367.

## III.  VENUE

4.      The events related in this Complaint occurred in Allegheny County, Pennsylvania,

in the Western District of Pennsylvania; therefore, venue is appropriate in this Court.

## IV.  ADMINISTRATIVE EXHAUSTION

5.      Ms. Naskovic cross-filed a verified charge of discrimination and retaliation with the

the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human

Relations Commission ("PHRC") raising claims for discrimination on the bases of race, color,

national origin, sex, and retaliation on August 14, 2020.

6.      The EEOC issued a right-to-sue letter dated October 29, 2021.

7.      Ms. Naskovic is filing this Complaint in Civil Action within 90 days of the right-to-

sue letter.

8.      More than one year has passed since Plaintiff filed her PHRC Charges and, as a

result, she has exhausted her administrative remedies for claims under the Pennsylvania Human

Relations Act.

## V.  FACTS SUPPORTING CLAIMS

9.      Ms. Naskovic is female and Mexican/Hispanic/Latinx.

10.     Ms. Naskovic worked for UPMC WorkPartners for more than ten (10) years from

February 1, 2009 until her termination on July 1, 2020.

11.     Ms. Naskovic initially was hired by UPMC Temp Services on November 12, 2007

and promoted on February 17, 2008, to Human Resource Assistant for UPMC Presbyterian, before

joining UPMC WorkPartners.

12.     UPMC WorkPartners was aware that Ms. Naskovic is female and Mexican/

Hispanic/Latinx.

13.     For example, Plaintiff's maiden name is Dalia Miranda and all of her supervisors had

knowledge of her maiden name as it was noted in her work email ("mirandad@WorkPartners.edu"

and "mirandad@workpartners.com") as well as other day-to-day items like correspondence, email signature, and phone system.

14.     WorkPartners was aware Ms. Naskovic is Mexican due to various Spanish translations she did for the Leave of Absence Department over the course of her employment.

15.     Linda Croushore, Director of WorkPartners, would bring Plaintiff various WorkPartners documents to look over and translate into Spanish.  Examples include a WorkPartners business card and letter for a client named F. C.

16.     When requesting leave, Ms. Naskovic often spoke about visiting family in Mexico, and a manager gave her leftover pesos upon returning from her trip to Mexico because she knew Ms. Naskovic often visited family in Mexico.

17.     Ms. Naskovic's last position was Leave Specialist II earning $26.29 an hour.

18.     As a Leave Specialist II, Ms. Naskovic was asked to do more work than other similarly situated employees outside her protected classes and beyond her job description.

19.     Among other things, she was required to do Spanish translations 1 to 2 times a month and take all Spanish speaking calls whereas other employees were not required, and the volume of her work was higher than other employees.

20.     While WorkPartners may have had an external translation service for callers (Trans Perfect), it was never utilized or implemented in Plaintiff's department and she was required and expected to handle all Spanish-speaking calls.

21.     Former co-worker Ana Arriaga witnessed another Leave Specialist, who was not of Hispanic descent but could speak Spanish, being told by a supervisor that Ms. Naskovic was to translate any Spanish documents or take all Spanish speaking calls.

22.     Ms. Naskovic was required to process new leaves within 1 business day when the work standard was 3 to 5 days.

23.     Ms. Naskovic frequently conducted Leave of Absence HR training for all WorkPartners employees in rotation with Absence Management Training Coordinator, Jill Barnabei.

24.     Ms. Naskovic assisted WorkPartners Manager, Leanna Plonka, with onboarding meetings of a new Physician group which no other Leave Specialist II did.

25.     Ms. Naskovic constantly fielded questions from the team daily as most of the Leave Specialists avoided going to the Leave supervisors Loretta Lucarelli, Sharon McCallister or Carol Bonner apparently due to inconsistencies in their processes.

26.     Ms. Naskovic raised these concerns to supervisors Carolyn Hutchinson and Loretta Lucarelli but they dismissed her concerns.

27.     Ms. Naskovic was forced to file a grievance dated August 23, 2019 indicating that UPMC WorkPartners' failures to follow its own policies and its mistreatment of her caused high degree of stress leading to serious anxiety for her both professionally and personally.

28.     When Ms. Naskovic complained of the excessive interruptions answering questions from new hires, Ms. Lucarelli told Ms. Naskovic she could work downstairs in the building lobby, but that was not realistic because she would lose access to her WorkPartners phone which was essential to complete her work and also potentially exposed her to progressive discipline for not answering her phone.

29.     Supervisor Loretta Lucarelli had promised Ms. Naskovic that her high work volume would be lowered but it never was because Director Carolyn Hutchinson refused any changes to Ms. Naskovic's accounts.

30.     In contrast, other similarly situated employees outside of Ms. Naskovic's protected classes had their accounts changed so as to lower the work volume.

31.     Due to childcare issues created by the Covid-19 global pandemic and daycare closures, Ms. Naskovic asked her supervisor Ms. Lucarelli on May 11, 2020 to be able to work remotely out of state in California for two months so that her family could assist with daycare duties.

32.     Ms. Lucarelli told her that should not be a problem.

33.     Other co-workers outside of Ms. Naskovic's protected classes were permitted to work remotely out of state including in New Jersey, Florida, and Ohio.  Jessica Christopher worked temporarily in New Jersey; Laura Richards worked temporarily in Illinois, Carrie Carlucci works permanently from Florida; and Chris Delgallo (male) works permanently from Ohio.

34.     Despite several follow-up emails and the urgent need to work remotely in California near family, Ms. Naskovic never received a response to her request.

35.     On May 26, 2020, Ms. Naskovic complained to Human Resources (Tiffany Mikesic) of retaliation for requesting to work remotely out of state and discrimination due to race/ethnicity. Plaintiff stated to Ms. Mikesic that she felt discriminated against and Ms. Mikesi said in order to be discriminated against Plaintiff would need to be a part of a protected class, and Plaintiff said she is. Ms. Mikesic asked, "what protected class are you"?  Plaintiff said "I am a Latino, mother of 3."  Ms. Mikesic said she would investigate Plaintiff's claims but she failed to do so.

36.     Ms. Naskovic informed Ms. Mikesic that another Latina employee named Ana Arriaga who also reported to Loretta Lucarelli was experiencing similar performance issues due to escalations by Ms. Hutchinson.

37.     Ms. Arriaga eventually resigned her position due to the stress and what she felt was

harassment by the supervisors.

38.     Human Resources indicated it would look into Ms. Naskovic's claims but never got back to her about them.

39.     The next time Ms. Naskovic heard from Ms. Mikesic was during her termination call.

40.     Prior to the termination call, Ms. Mikesic and Ms. Lucarelli verbally stated on more than one occasion that they were not looking to terminate Ms. Naskovic's position.

41.     On May 26, 2020, Ms. Mikesic said to Ms. Naskovic that she was a tenured employee and Ms. Mikesic was not looking to terminate her position.

42.     On May 28, 2020, Ms. Naskovic followed up with Human Resources indicating that her workload was overwhelming and provided detailed information on her various work assignments.

43.     On June 3, 2020, Ms. Naskovic again complained to Human Resources that recent complaints from management were in retaliation for her request to work remotely out of state and that she still had not received a response to her request.

44.     On June 8, 2020, Ms. Naskovic discovered that Ms. Lucarelli was working remotely out of state in Minnesota.

45.     Ms. Naskovic was fired on July 1, 2020 just weeks after engaging in protected activity.

46.     WorkPartners' claim of termination for performance reasons is false and a pretext.

47.     WorkPartners' claim that the decision to terminate had been in process since April 14, 2020 is false and a pretext, including that when Ms. Naskovic spoke with Ms. Mikesic on May 26, 2020 when she complained of discrimination, Ms. Mikesic indicated she was not looking to

6

terminate as Ms. Naskovic was a tenured employee.

48.     Ms. Naskovic never was told her termination was "being processed" as the reason for denying remote work, and that justification is a post hoc fabrication.

49.     Ms. Naskovic submitted several follow up emails about working remotely but they were ignored by management.

50.     WorkPartners' claim that a 2019 Performance Improvement Plan supported the termination is false and a pretext including that Ms. Naskovic successfully completed the PIP in 2019.

51.     Ms. Naskovic has been discriminated against based on her race, color, national origin, ethnicity, and sex and retaliated against for engaging in protected activity.

52.     As a result of the discrimination and retaliation, Ms. Naskovic was forced to work countless days of 12+ hours and has suffered a significant loss of income and benefits as a result of her termination particularly during the global pandemic as well as an enormous amount of emotional stress.

53.     Other employees in Ms. Naskovic's protected classes, including Ms. Arriaga, were mistreated by WorkPartners.

54.     Employees outside of Ms. Naskovic's protected classes were treated more favorably.

55.     WorkPartners paid a Caucasian, U.S. born Leave Specialist II the same (or about the same salary) even though that individual had only one year of experience whereas Ms. Naskovic had a decade worth of experience.

56.     Ms. Naskovic was underpaid in comparison to similarly situated employees outside her protected classes.

57.     Dustin Kolan, a male Leave Specialist was treated more favorably than Plaintiff.

58.     For example, Loretta Luccarelli stated to Plaintiff that Mr. Kolan had a difficult time speaking to clients on the telephone so WorkPartners purposely gave him accounts where he spent less time on phone calls.  Mr. Kolan often was behind on task completion time frames and had several complaints about his work but he was never placed on any performance plans nor reprimanded.  Mr. Kolan was given accounts with less work.  When Mr. Kolan resigned to resume his education, Carolyn Hutchinson and Loretta Lucarelli allowed him to submit a resignation date but extended his employment by using several weeks of vacation time to extend his resignation date so he could receive health care benefits longer but not actually work.  Carolyn Hutchinson and Loretta Lucarelli did not extend this type of offer to females who resigned in the department including, but not limited to, Cara Kelley, Leave Specialist I.

59.     Chris DelGallo, male, had his business units reshuffled several times to lessen his workload.

60.     Craig Miller, male, often had his core work hours accommodated and may have even worked part-time which was never offered to Plaintiff.

61.     On a Team Call, Plaintiff once asked what was the best way to keep up with a heavy workload as well as do vacation coverage for other teammates.  Supervisor, Carol Bonner, replied perhaps you should speak with Jill Barnebei who also has 3 children and is doing really well with no difficulties.

62.     Ms. Naskovic was terminated after more than 10 years of dedicated employment because of her race/color/ethnicity (Latina/Hispanic/Mexican), national origin (Mexico), and/or sex (Female) and/or in retaliation for her complaints of discrimination which shortly preceded her

termination.

63.     Defendant demonstrated malice and reckless indifference to Plaintiff's legal rights.

64.     Plaintiff requests a jury trial.

## VI.  COUNTS

### COUNT I
### RACE DISCRIMINATION, IN VIOLATION OF TITLE VII
### OF THE CIVIL RIGHTS ACT, AS AMENDED (42 U.S.C.A. §§ 2000e et seq.)

65.     Plaintiff hereby incorporates Paragraphs 1 through 64, as if more fully set forth

herein.

66.     Under 42 U.S.C.A. § 2000e-2(a)(1) and (2), "it shall be an unlawful employment

practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to

limit, segregate, or classify his employees or applicants for employment in any way which would

deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect

his status as an employee, because of such individual's race, color, religion, sex, or national origin."

67.     Plaintiff is a member of a protected class, in that she is Mexican/Hispanic/Latinx.

68.     Plaintiff suffered an adverse employment action, in that she was discharged from

employment by Defendant because of her race.

69.     Defendant treated similarly situated employees outside Plaintiff's protected class

more favorably than Plaintiff was treated, as more fully set forth above and herein.

70.     Plaintiff was qualified to perform the duties of her job.

71.     Defendant engaged in disparate treatment discrimination against Plaintiff, as more

9

fully set forth above and herein, and engaged in intentional discrimination against Plaintiff, in the terms and conditions of Plaintiff's employment, and in the termination of Plaintiff's employment on or about July 1, 2020.

72.     Defendant's conduct was racially motivated and constitutes unlawful discrimination on the basis of race against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, as amended.

73.     The reason given by Defendant for Plaintiff's termination of employment is nothing more than a pretext, and has been asserted by Defendant to cover up the intentional discriminatory actions taken by Defendant.

74.     All conditions precedent to the institution of this lawsuit have been fulfilled.

75.     The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

76.     Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.     All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

B.     Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant's conduct;

C.     Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.     A permanent injunction enjoining Defendant from engaging in the discriminatory practices

complained of herein;

E.     A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C.A. §§ 2000e et seq.;

F.     The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

G.     An award of reasonable attorney's fees, costs, and litigation expenses;

H.     An award of punitive damages, and;

I.     Such other relief as the Court may deem just or equitable.

**COUNT II**
**NATIONAL ORIGIN DISCRIMINATION, IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT, AS AMENDED (42 U.S.C.A. §§ 2000e et seq.)**

77.     Plaintiff hereby incorporates Paragraphs 1 through 76, as if more fully set forth herein.

78.     Under 42 U.S.C.A. § 2000e-2(a)(1) and (2), "it shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

79.     Plaintiff is a member of a protected class, in that she is Mexican/Hispanic/Latinx.

80.     Plaintiff suffered an adverse employment action, in that she was discharged from employment by Defendant because of her national origin.

11

81.     Defendant treated similarly situated employees outside Plaintiff's protected class more favorably than Plaintiff was treated, as more fully set forth above and herein.

82.     Plaintiff was qualified to perform the duties of her job.

83.     Defendant engaged in disparate treatment discrimination against Plaintiff, as more fully set forth above, and engaged in intentional discrimination against Plaintiff, in the terms and conditions of Plaintiff's employment, and in the termination of Plaintiff's employment on or about July 1, 2020.

84.     Defendant's conduct was motivated by her national origin and constitutes unlawful discrimination on the basis of national origin against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, as amended.

85.     The reason given by Defendant for Plaintiff's termination of employment is nothing more than a pretext, and has been asserted by Defendant to cover up the intentional discriminatory actions taken by Defendant.

86.     All conditions precedent to the institution of this lawsuit have been fulfilled.

87.     The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

88.     Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.     All wages and benefits Plaintiff would have received but for the discrimination, including

prejudgment interest;

B.      Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant's conduct;

C.      Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.      A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

E.      A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C.A. §§ 2000e et seq.;

F.      The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

G.      An award of reasonable attorney's fees, costs, and litigation expenses;

H.      An award of punitive damages, and;

I.      Such other relief as the Court may deem just or equitable.

## COUNT III
## RETALIATION IN VIOLATION OF TITLE VII
## OF THE CIVIL RIGHTS ACT, AS AMENDED (42 U.S.C.A. §§ 2000e et seq.)

89.      Plaintiff hereby incorporates Paragraphs 1 through 88, as if more fully set forth herein.

90.      Plaintiff engaged in protected activity under Title VII.

91.      For example, on May 26, 2020, Ms. Naskovic complained to Human Resources (Tiffany Mikesic) of retaliation for requesting to work remotely out of state and discrimination due to race.

92.      After engaging in protected activity, Plaintiff suffered an adverse employment action when she was fired July 1, 2020.

13

93.    A causal connection exists between the protected activity and the adverse employment action including based on the close temporal proximity, animus, and pretext.

94.    Defendant engaged in retaliation against Plaintiff, as more fully set forth above, and engaged in retaliation against Plaintiff, in the terms and conditions of Plaintiff's employment, and in the termination of Plaintiff's employment on or about July 1, 2020.

95.    Defendant's conduct was motivated by her protected conduct and constitutes unlawful retaliation against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, as amended.

96.    The reason given by Defendant for Plaintiff's termination of employment is nothing more than a pretext, and has been asserted by Defendant to cover up the retaliatory actions taken by Defendant.

97.    All conditions precedent to the institution of this lawsuit have been fulfilled.

98.    The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

99.    Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    All wages and benefits Plaintiff would have received but for the retaliation, including prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant's conduct;

C.      Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.      A permanent injunction enjoining Defendant from engaging in the retaliatory practices complained of herein;

E.      A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C.A. §§ 2000e et seq.;

F.      The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

G.      An award of reasonable attorney's fees, costs, and litigation expenses;

H.      An award of punitive damages, and;

I.      Such other relief as the Court may deem just or equitable.

**COUNT IV**
**SEX DISCRIMINATION, IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT, AS AMENDED (42 U.S.C.A. §§ 2000e et seq.)**

100.    Plaintiff hereby incorporates Paragraphs 1 through 99, as if more fully set forth herein.

101.    Under 42 U.S.C.A. § 2000e-2(a)(1) and (2), "it shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

102.    Plaintiff is a member of a protected class, in that she is female.

103.    Plaintiff suffered an adverse employment action, in that she was discharged from

employment by Defendant because of her race.

104.    Defendant treated similarly situated employees outside Plaintiff's protected class more favorably than Plaintiff was treated, as more fully set forth above and herein.

105.    Plaintiff was qualified to perform the duties of her job.

106.    Defendant engaged in disparate treatment discrimination against Plaintiff, as more fully set forth above and herein, and engaged in intentional discrimination against Plaintiff, in the terms and conditions of Plaintiff's employment, and in the termination of Plaintiff's employment on or about July 1, 2020.

107.    Defendant's conduct was motivated based on Plaintiff's sex and gender and constitutes unlawful discrimination on the basis of sex against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, as amended.

108.    The reason given by Defendant for Plaintiff's termination of employment is nothing more than a pretext, and has been asserted by Defendant to cover up the intentional discriminatory actions taken by Defendant.

109.    All conditions precedent to the institution of this lawsuit have been fulfilled.

110.    The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

111.    Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

16

A.    All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant's conduct;

C.    Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.    A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

E.    A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C.A. §§ 2000e et seq.;

F.    The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

G.    An award of reasonable attorney's fees, costs, and litigation expenses;

H.    An award of punitive damages, and;

I.    Such other relief as the Court may deem just or equitable.

## COUNT V
## RACE DISCRIMINATION, IN VIOLATION OF SECTION 1981 (42 U.S.C. § 1981(a))

112.    Plaintiff hereby incorporates Paragraphs 1 through 111, as if more fully set forth herein.

113.    As set forth in Section 1981: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...." 42 U.S.C. § 1981(a).

114.    Plaintiff is a member of a race-protected class, in that she is Mexican/ Hispanic/ Latinx.

115.     Plaintiff suffered an adverse employment action, in that she was discharged from employment by Defendant because of her race.

116.     Defendant treated similarly situated employees outside Plaintiff's protected class more favorably than Plaintiff was treated, as more fully set forth above and herein.

117.     Plaintiff was qualified to perform the duties of her job.

118.     Defendant engaged in disparate treatment discrimination against Plaintiff, as more fully set forth above and herein, and engaged in intentional discrimination against Plaintiff, in the terms and conditions of Plaintiff's employment, and in the termination of Plaintiff's employment on or about July 1, 2020.

119.     Defendant's conduct was racially motivated and constitutes unlawful discrimination on the basis of race against Plaintiff, in violation of Section 1981.

120.     The reason given by Defendant for Plaintiff's termination of employment is nothing more than a pretext, and has been asserted by Defendant to cover up the intentional discriminatory actions taken by Defendant.

121.     The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

122.     Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.     All wages and benefits Plaintiff would have received but for the discrimination, including

prejudgment interest;

B.      Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant's conduct;

C.      Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.      A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

E.      A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of Section 1981;

F.      The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

G.      An award of reasonable attorney's fees, costs, and litigation expenses;

H.      An award of punitive damages, and;

I.      Such other relief as the Court may deem just or equitable.

## COUNT VI
## RETALIATION IN VIOLATION OF SECTION 1981

123.    Plaintiff hereby incorporates Paragraphs 1 through 122, as if more fully set forth herein.

124.    Section 1981 encompasses retaliation claims.  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008).

125.    Plaintiff engaged in protected activity under Section 1981.

126.    For example, on May 26, 2020, Ms. Naskovic complained to Human Resources (Tiffany Mikesic) of retaliation for requesting to work remotely out of state and discrimination due to race.

127.    After engaging in protected activity, Plaintiff suffered an adverse employment action

19

when she was fired July 1, 2020.

128.    A causal connection exists between the protected activity and the adverse employment action including based on the close temporal proximity, animus, and pretext.

129.    Defendant engaged in retaliation against Plaintiff, as more fully set forth above, and engaged in retaliation against Plaintiff, in the terms and conditions of Plaintiff's employment, and in the termination of Plaintiff's employment on or about July 1, 2020.

130.    Defendant's conduct was motivated by her protected conduct and constitutes unlawful retaliation against Plaintiff, in violation of Section 1981.

131.    The reason given by Defendant for Plaintiff's termination of employment is nothing more than a pretext, and has been asserted by Defendant to cover up the retaliatory actions taken by Defendant.

132.    The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

133.    Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    All wages and benefits Plaintiff would have received but for the retaliation, including prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant's conduct;

C.    Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.     A permanent injunction enjoining Defendant from engaging in the retaliatory practices complained of herein;

E.     A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of Section 1981;

F.     The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

G.     An award of reasonable attorney's fees, costs, and litigation expenses;

H.     An award of punitive damages, and;

I.     Such other relief as the Court may deem just or equitable.

**COUNT VII**
**RACE DISCRIMINATION,**
**IN VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT**

134.    Plaintiff hereby incorporates Paragraphs 1 through 133, as if more fully set forth herein.

135.    Plaintiff is a member of a protected class, in that she is Mexican/Hispanic/Latinx.

136.    Plaintiff suffered an adverse employment action, in that she was discharged from employment by Defendant because of her race.

137.    Defendant treated similarly situated employees outside Plaintiff's protected class more favorably than Plaintiff was treated, as more fully set forth above and herein.

138.    Plaintiff was qualified to perform the duties of her job.

139.    Defendant engaged in disparate treatment discrimination against Plaintiff, as more fully set forth above and herein, and engaged in intentional discrimination against Plaintiff, in the terms and conditions of Plaintiff's employment, and in the termination of Plaintiff's employment on or about July 1, 2020.

140.    Defendant's conduct was racially motivated and constitutes unlawful discrimination on the basis of race against Plaintiff, in violation of the Pennsylvania Human Relations Act ("PHRA").

141.    The reason given by Defendant for Plaintiff's termination of employment is nothing more than a pretext, and has been asserted by Defendant to cover up the intentional discriminatory actions taken by Defendant.

142.    All conditions precedent to the institution of this lawsuit have been fulfilled.

143.    The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

144.    Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant's conduct;

C.    Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.    A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

E.    A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of the PHRA;

F.    The Court retain jurisdiction of this case until such time as it is assured that Defendant has

remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

G.     An award of reasonable attorney's fees, costs, and litigation expenses; and

H.     Such other relief as the Court may deem just or equitable.

## COUNT VIII
## NATIONAL ORIGIN DISCRIMINATION,
## IN VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT

145.     Plaintiff hereby incorporates Paragraphs 1 through 144, as if more fully set forth herein.

146.     Plaintiff is a member of a protected class, in that she is Mexican/Hispanic/Latinx.

147.     Plaintiff suffered an adverse employment action, in that she was discharged from employment by Defendant because of her national origin.

148.     Defendant treated similarly situated employees outside Plaintiff's protected class more favorably than Plaintiff was treated, as more fully set forth above and herein.

149.     Plaintiff was qualified to perform the duties of her job.

150.     Defendant engaged in disparate treatment discrimination against Plaintiff, as more fully set forth above, and engaged in intentional discrimination against Plaintiff, in the terms and conditions of Plaintiff's employment, and in the termination of Plaintiff's employment on or about July 1, 2020.

151.     Defendant's conduct was motivated by her national origin and constitutes unlawful discrimination on the basis of national origin against Plaintiff, in violation of the PHRA.

152.     The reason given by Defendant for Plaintiff's termination of employment is nothing more than a pretext, and has been asserted by Defendant to cover up the intentional discriminatory

actions taken by Defendant.

153.    All conditions precedent to the institution of this lawsuit have been fulfilled.

154.    The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

155.    Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant's conduct;

C.    Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.    A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

E.    A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of the PHRA;

F.    The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

G.    An award of reasonable attorney's fees, costs, and litigation expenses; and

H.    Such other relief as the Court may deem just or equitable.

**COUNT IX**
**RETALIATION IN VIOLATION OF**
**PENNSYLVANIA HUMAN RELATIONS ACT**

24

156.    Plaintiff hereby incorporates Paragraphs 1 through 155, as if more fully set forth herein.

157.    Plaintiff engaged in protected activity under the PHRA.

158.    For example, on May 26, 2020, Ms. Naskovic complained to Human Resources (Tiffany Mikesic) of retaliation for requesting to work remotely out of state and discrimination due to race.

159.    After engaging in protected activity, Plaintiff suffered an adverse employment action when she was fired July 1, 2020.

160.    A causal connection exists between the protected activity and the adverse employment action including based on the close temporal proximity, animus, and pretext.

161.    Defendant engaged in retaliation against Plaintiff, as more fully set forth above, and engaged in retaliation against Plaintiff, in the terms and conditions of Plaintiff's employment, and in the termination of Plaintiff's employment on or about July 1, 2020.

162.    Defendant's conduct was motivated by her protected conduct and constitutes unlawful retaliation against Plaintiff, in violation of the PHRA.

163.    The reason given by Defendant for Plaintiff's termination of employment is nothing more than a pretext, and has been asserted by Defendant to cover up the retaliatory actions taken by Defendant.

164.    All conditions precedent to the institution of this lawsuit have been fulfilled.

165.    The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

166.    Plaintiff requests that the Court order injunctive relief to address the unlawful

conduct complained of herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    All wages and benefits Plaintiff would have received but for the retaliation, including prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant's conduct;

C.    Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.    A permanent injunction enjoining Defendant from engaging in the retaliatory practices complained of herein;

E.    A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of the PHRA;

F.    The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

G.    An award of reasonable attorney's fees, costs, and litigation expenses; and

H.    Such other relief as the Court may deem just or equitable.

**COUNT X
SEX DISCRIMINATION,
IN VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT**

167.    Plaintiff hereby incorporates Paragraphs 1 through 166, as if more fully set forth

herein.

168.    Plaintiff is a member of a protected class, in that she is female.

169.    Plaintiff suffered an adverse employment action, in that she was discharged from

employment by Defendant because of her race.

26

170.     Defendant treated similarly situated employees outside Plaintiff's protected class more favorably than Plaintiff was treated, as more fully set forth above and herein.

171.     Plaintiff was qualified to perform the duties of her job.

172.     Defendant engaged in disparate treatment discrimination against Plaintiff, as more fully set forth above and herein, and engaged in intentional discrimination against Plaintiff, in the terms and conditions of Plaintiff's employment, and in the termination of Plaintiff's employment on or about July 1, 2020.

173.     Defendant's conduct was motivated based on Plaintiff's sex and gender and constitutes unlawful discrimination on the basis of sex against Plaintiff, in violation of the PHRA.

174.     The reason given by Defendant for Plaintiff's termination of employment is nothing more than a pretext, and has been asserted by Defendant to cover up the intentional discriminatory actions taken by Defendant.

175.     All conditions precedent to the institution of this lawsuit have been fulfilled.

176.     The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, emotional anguish, humiliation, embarrassment, and pain and suffering.

177.     Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.     All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

27

B.     Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendant's conduct;

C.     Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.     A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

E.     A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of the PHRA;

F.     The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

G.     An award of reasonable attorney's fees, costs, and litigation expenses; and

H.     Such other relief as the Court may deem just or equitable.

**COUNT XI**
**VIOLATION OF FAIR LABOR STANDARDS ACT**
**UNPAID OVERTIME COMPENSATION**

178.    Plaintiff hereby incorporates Paragraphs 1 through 177, as if more fully set forth herein.

179.    Plaintiff brings this action to recover from Defendant unpaid overtime compensation and an additional equal amount as liquidated damages, pursuant to 29 U.S.C.A. § 216(b) and other provisions of the Fair Labor Standards Act of 1938 (FLSA).

180.    Jurisdiction is conferred on this Court by 29 U.S.C.A. § 216, 28 U.S.C.A. § 1331, and 28 U.S.C.A. § 1337, in that this matter presents a question of federal law and in that this matter involves a statute addressing interstate commerce.

181.    At all times herein set forth, Defendant corporation was an employer within the definition of the FLSA, 29 U.S.C.A. § 203, and Plaintiff was at all times herein set forth an employee

within the definitions of that section.

182.    At all times herein set forth, Defendant corporation was engaged in commerce within the meaning of the FLSA.

183.    At all times herein set forth, Defendant corporation employed Plaintiff in the capacity of a Leave Specialist.

184.    Plaintiff was employed by Defendant corporation in the capacity of Leave Specialist from February 1, 2009, to July 1, 2020, inclusive.

185.    According to Defendant, Defendant corporation employed Plaintiff with an annual salary of fifty-four thousand six hundred eighty-three dollars and twenty cents ($54,683.20), which wage was paid until July 1, 2020, when Plaintiff's employment was terminated.

186.    During the period covered by the employment, Plaintiff performed overtime work for which no additional compensation was paid to her by Defendant corporation in violation of the provisions of the FLSA.

187.    Plaintiff was misclassified as an exempt administrative or professional employee.

188.    Based on information and belief, after Plaintiff was terminated, Defendant began paying overtime wages to employees in the same or substantially similar positions to Plaintiff including Leave Specialist.

189.    Pursuant to 29 U.S.C. §§ 207, 216, there is due and owing from the Defendant corporation to Plaintiff as compensation for overtime work substantially about $21,000, plus an additional equal amount as liquidated damages together with an additional sum due for reasonable attorney fees.

**PRAYER FOR RELIEF**

190.     For these reasons, Plaintiff prays for judgment against Defendant as follows:

A.     Judgment in the amount of all back wages due as provided by State and Federal wage and hour law;

B.     Liquidated damages to the maximum amount permitted by State and Federal wage and hour law:

C.     Prejudgment interest;

D.     Reasonable attorney's fees and costs of this action;

E.     Postjudgment interest at the highest rates allowable by law; and

F.     Any other and further relief as this Court deems just and proper.

## COUNT XII
## VIOLATION OF PA MINIMUM WAGE ACT
## UNPAID OVERTIME COMPENSATION

191.     Plaintiff hereby incorporates Paragraphs 1 through 190, as if more fully set forth herein.

192.     Plaintiff brings this action to recover from Defendant unpaid overtime compensation and an additional equal amount as liquidated damages, pursuant to 43 Pa. Stat. Ann. § 333.104 and other provisions of the Pennsylvania Minimum Wage Act of 1968 (PMWA), as amended, that regulates employers' compensation practices, requiring payment of the minimum wage and overtime.

193.     At all times herein set forth, Defendant corporation was an employer within the definition of the PMWA, and Plaintiff was at all times herein set forth an employee within the definitions of that Act.

194.     At all times herein set forth, Defendant corporation was engaged in commerce within the meaning of the PMWA.

30

195.    At all times herein set forth, Defendant corporation employed Plaintiff in the capacity of a Leave Specialist.

196.    Plaintiff was employed by Defendant corporation in the capacity of Leave Specialist from February 1, 2009, to July 1, 2020, inclusive.

197.    According to Defendant, Defendant corporation employed Plaintiff with an annual salary of fifty-four thousand six hundred eighty-three dollars and twenty cents ($54,683.20), which wage was paid until July 1, 2020, when Plaintiff's employment was terminated.

198.    During the period covered by the employment, Plaintiff performed overtime work for which no additional compensation was paid to her by Defendant corporation in violation of the provisions of the PMWA.

199.    Plaintiff was misclassified as an exempt administrative or professional employee.

200.    Based on information and belief, after Plaintiff was terminated, Defendant began paying overtime wages to employees in the same or substantially similar positions to Plaintiff including Leave Specialist.

201.    Pursuant to the PMWA, there is due and owing from the Defendant corporation to Plaintiff as compensation for overtime work substantially about $21,000, plus an additional equal amount as liquidated damages together with an additional sum due for reasonable attorney fees.

## PRAYER FOR RELIEF

202.    For these reasons, Plaintiff prays for judgment against Defendant as follows:

A.    Judgment in the amount of all back wages due as provided by State and Federal wage and hour law;

B.    Liquidated damages to the maximum amount permitted by State and Federal wage and hour law:

31

C.      Prejudgment interest;

D.      Reasonable attorney's fees and costs of this action;

E.      Postjudgment interest at the highest rates allowable by law; and

F.      Any other and further relief as this Court deems just and proper.

**COUNT XIII**
**VIOLATION OF PA WAGE PAYMENT AND COLLECTION LAW**
**UNPAID OVERTIME COMPENSATION**

203.    Plaintiff hereby incorporates Paragraphs 1 through 202, as if more fully set forth herein.

204.    Plaintiff brings this action to recover from Defendant unpaid overtime compensation and an additional equal amount as liquidated damages, pursuant to the Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. Ann. § 260.1 ("WPCL").

205.    At all times herein set forth, Defendant corporation was an employer within the definition of the WPCL, and Plaintiff was at all times herein set forth an employee within the definitions of that Law.

206.    At all times herein set forth, Defendant corporation was engaged in commerce within the meaning of the WPCL.

207.    At all times herein set forth, Defendant corporation employed Plaintiff in the capacity of a Leave Specialist.

208.    Plaintiff was employed by Defendant corporation in the capacity of Leave Specialist from February 1, 2009, to July 1, 2020, inclusive.

209.    According to Defendant, Defendant corporation employed Plaintiff with an annual salary of fifty-four thousand six hundred eighty-three dollars and twenty cents ($54,683.20), which

32

wage was paid until July 1, 2020, when Plaintiff's employment was terminated.

210.    During the period covered by the employment, Plaintiff performed overtime work for which no additional compensation was paid to her by Defendant corporation in violation of the provisions of the PMWA and FLSA, thereby entitling her to recover under the WPCL.

211.    Plaintiff was misclassified as an exempt administrative or professional employee.

212.    Based on information and belief, after Plaintiff was terminated, Defendant began paying overtime wages to employees in the same or substantially similar positions to Plaintiff including Leave Specialist.

213.    Pursuant to the PMWA and WPCL, there is due and owing from the Defendant corporation to Plaintiff as compensation for overtime work substantially about $21,000, plus an additional equal amount as liquidated damages together with an additional sum due for reasonable attorney fees.

## PRAYER FOR RELIEF

214.    For these reasons, Plaintiff prays for judgment against Defendant as follows:

A.    Judgment in the amount of all back wages due as provided by State and Federal wage and hour law;

B.    Liquidated damages of 25% of the total amount of wages due;

C.    Prejudgment interest;

D.    Reasonable attorney's fees and costs of this action;

E.    Postjudgment interest at the highest rates allowable by law; and

F.    Any other and further relief as this Court deems just and proper.

Respectfully submitted,


s/James B. Lieber

James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
LIEBER HAMMER HUBER & PAUL, P.C.
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)
Counsel for Plaintiff Dalia Naskovic